IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PRISCILLA BILLSIE,

    Plaintiff,

v.

THOMAS R. BROOKSBANK and
CRISIS COLLECTIONS MANAGEMENT LLC,

    Defendant.

## COMPLAINT FOR DAMAGES

1. Defendant Thomas R. Brooksbank, an attorney debt collector, and Crisis Collections Management LLC, a debt collection company, wrongfully garnished Plaintiff Priscilla Billsie's wages and refuse to return the garnished wages to her even after Ms. Billsie provided documents that show that the debt was owed by someone other than Ms. Billsie.

2. Ms. Billsie seeks damages under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), and New Mexico consumer protection law.

## Jurisdiction

3. This Court has jurisdiction under the FDCPA, 15 U.S.C. § 1692k(d), and under 28 U.S.C. §§ 1331 & 1337. This Court has supplemental jurisdiction over the state claims pursuant to 28 U.S.C. § 1367.

## Parties

4. Plaintiff Priscilla Billsie resides in Church Rock, New Mexico. She is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3).

5. Defendant Thomas R. Brooksbank is an attorney whose principal business is the collection of consumer debts. He regularly collects or attempts to collect debts owed or

due or asserted to be owed or due another. He has been engaged by multiple creditors to do so. He has been sued for his unlawful debt collection practices in this Court. *See*, *Campos v. Brooksbank*, 120 F.Supp.2d 1271 (D. N.M. 2000). Mr. Brooksbank is "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

6. Defendant Crisis Collections Management LLC ("CCM") is a foreign corporation whose principal business is the collection of consumer debts. It regularly collects or attempts to collect debts owed or due or asserted to be owed or due another. It has been engaged by multiple creditors to do so. CCM is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).

## Facts

7. On June 28, 1996, Priscilla A. Yazzie, entered into a finance contract for the purchase of a 1996 Chevrolet Lumina from Casa Chevrolet-Geo, Inc. in Albuquerque, New Mexico.

8. Casa Chevrolet-Geo assigned the finance contract to General Motors Acceptance Corporation ("GMAC") shortly after Ms. Yazzie's purchase of the Lumina.

9. Ms. Yazzie failed to make her payments. GMAC charged off the account. After charge off of the account, GMAC assigned, sold or transferred the account to CCM for collection.

10. Ms. Billsie has never owned a 1996 Chevrolet Lumina. She has never entered into a finance contract for the purchase of a 1996 Chevrolet Lumina. She has never purchased a vehicle from Casa Chevrolet-Geo.

11. On May 4, 1998, Mr. Brooksbank, as the attorney for GMAC, obtained a default judgment against Ms. Yazzie, concerning the deficiency balance on the Lumina finance

contract. *See*, *General Motors Acceptance Corporation v. Yazzie*, No. CV-98-1046 (Bernalillo County District Court).

12. Ms. Billsie was never served with any pleadings or any judgment in *General Motors Acceptance Corporation v. Yazzie*.

13. On February 25, 2004, Mr. Brooksbank filed a Writ of Garnishment in the *Yazzie* action against Wal-Mart Stores, Inc. as garnishee, in which he alleged that Priscilla A. Yazzie is also known as Priscilla Billsie and in which he listed two social security numbers, included Ms. Billsie's social security number.

14. In March 2004, Wal-Mart began garnishing Ms. Billsie's paychecks per the garnishment pleadings served at the direction of Mr. Brooksbank.

15. On May 5, 2004, the Bernalillo County District Court entered a judgment on the Writ of Garnishment against Wal-Mart via a form prepared and submitted by Mr. Brooksbank.

16. At Mr. Brooksbank's direction, the garnishment judgment was served on Wal-Mart.

17. Ms. Billsie did not receive the garnishment pleadings or the garnishment judgment prior to Wal-Mart garnishing her paycheck.

18. When Ms. Billsie became aware of the garnishment, she asked Wal-Mart's national office about the garnishment and was told that it was the result of a garnishment judgment obtained by Mr. Brooksbank.

19. Ms. Billsie contacted Mr. Brooksbank's office and told his staff that she had never entered into a finance contract for the purchase of a 1996 Chevrolet Lumina from Casa Chevrolet-Geo. Mr. Brooksbank's staff refused to stop the garnishment.

20. Unable to stop Mr. Brooksbank from continuing to wrongfully garnish her paychecks, Ms. Billsie sought legal assistance from New Mexico Legal Aid in Gallup, New Mexico.

21. In a letter dated June 23, 2006, Joel Jasperse, an attorney at New Mexico Legal Aid, informed Mr. Brooksbank that the garnishment appeared to be the result of mistaken identity. Mr. Jasperse asked for a refund of the garnished amounts or an explanation if Mr. Brooksbank contended that the garnishment was lawful. *See*, Exhibit A, letter.

22. On June 27, 2006, Ed Kaufer called Mr. Jasperse concerning the garnishment.

23. In the telephone conversation, Mr. Kaufer represented himself as an employee of GMAC. Mr. Kaufer stated that Ms. Yazzie and Ms. Billsie appear to be the same person and that he would provide Mr. Jasperse with documents in support of this contention.

24. Mr. Kaufer is not an employee of GMAC, but rather an employee of CCM.

25. In a follow up letter dated July 14, 2006, Mr. Jasperse informed Mr. Brooksbank that he still had not received any documentation that would show the garnishment was lawful. Mr. Jasperse again asked that the garnishment be stopped, or, alternately, to have the garnished funds placed in an escrow account to be returned to Ms. Billsie if Mr. Brooksbank determined that the garnishment was the result of mistaken identity. *See*, Exhibit B, letter.

26. On July 18, 2006, Mr. Brooksbank telephoned Mr. Jasperse and told him that he had sufficient funds in a GMAC account to repay Ms. Billsie if it is determined that the garnishment is wrongful. Mr. Brooksbank stated that he would call Mr. Jasperse after further investigation into the matter. Mr. Brooksbank also stated another person would be taking over the investigation into the matter.

27. On July 26, 2006, Mr. Brooksbank telephoned Mr. Jasperse and stated that he would send Mr. Jasperse a "pile of documents" concerning the mistaken identity issue.

28. On July 27, 2006, Mr. Brooksbank mailed Mr. Jasperse documents concerning the *General Motors Acceptance Corporation v. Yazzie* case and the finance contract for the 1996 Chevrolet Lumina at issue in the case.

29. In a letter dated August 30, 2006, after review of the documents sent by Mr. Brooksbank, Mr. Jasperse further explained to Mr. Brooksbank that the garnishment of Ms. Billsie's wages was the result of mistaken identity, likely caused by the fact that Ms. Billsie's maiden name is "Yazzie" and Ms. Billsie's social security number is identical to Ms. Yazzie's social security number, except for one digit. In support of this explanation, Mr. Jasperse attached documents that include Ms. Billsie's New Mexico identification card, her social security card, her paycheck stub and her marriage license. Mr. Jasperse again requested that Mr. Brooksbank return to Ms. Billsie the garnished amounts. *See*, Exhibit C, letter with supporting documents (confidential personal information is redacted).

30. In a letter dated September 14, 2006, Mr. Kaufer disputed that Ms. Billsie and Ms. Yazzie were different persons and refused to return the garnished amounts. Mr. Kaufer also accused Ms. Billsie of committing a felony because he claimed that her social security number belonged to another person. This letter is on CCM letterhead. *See*, Exhibit D, letter (confidential personal information is redacted, supporting documents not included).

31. On September 20, 2006, Mr. Brooksbank filed a Release of Previous Garnishment in *General Motors Acceptance Corporation v. Yazzie*, in which he gives notice that no further obligation is owed in the garnishment of Ms. Billsie's wages.

32. From March 2004 until December 2006, Defendants garnished Ms. Billsie's paychecks, taking a total of $9,893.12.

33. Defendants still refuse to return any of the garnished amounts to Ms. Billsie.

34. CCM is not licensed as a debt collector in New Mexico.

35. In response to an inquiry by New Mexico Financial Institutions Division, Mr. Kaufer stated that CCM is not required to be licensed in New Mexico because "all collection activity is performed by Thomas R. Brooksbank, a duly licensed New Mexico attorney." *See,* Exhibit E, letter.

36. An award of punitive damages is appropriate to deter future similar conduct by the Defendants.

37. As a result of Defendants' actions or inactions, Ms. Billsie suffered actual damages, including wrongful garnishment of $9,893.12, aggravation, inconvenience and lost time.

### First Claim for Relief: Violations of the FDCPA

38. Defendants' actions violate the FDCPA, including but not limited to 15 U.S.C. §§ 1692e, 1692e(10), 1692e(14), 1692f and 1692f(1).

39. Ms. Billsie is entitled to recover statutory damages, actual damages and reasonable attorney fees and costs.

### Second Claim for Relief: Violations of the New Mexico Unfair Practices Act

40. Defendants' actions constitute unfair or deceptive trade practices within the meaning of the New Mexico Unfair Practices Act ("UPA"), as defined by NMSA 1978 § 57-12-2(D) generally and NMSA 1978 § 57-12-2(D)(14) and (15) specifically.

41. Defendants willfully engaged in these unlawful trade practices.

42. Ms. Billsie is entitled to recover actual or statutory damages, actual or statutory damages trebled, plus reasonable attorney fees and costs.

### Third Claim for Relief: Conversion

43. Defendants seized Ms. Billsie's wages, depriving her of her ownership rights in and use of these wages.

44. Ms. Billsie was not liable for the debt which formed the basis for the garnishment, nor did Defendants have any other right under law to seize Ms. Billsie's wages.

45. Ms. Billsie suffered damages as a result.

46. Ms. Billsie is entitled to recover actual and punitive damages in an amount to be determined at trial.

### Fourth Claim for Relief: Tortious Debt Collection

47. Defendants' actions and inactions constitute unreasonable and tortious debt collection practices in violation of the doctrine enunciated by the New Mexico Supreme Court in *Montgomery Ward v. Larragoite*, 81 N.M. 383, 467 P.2d 399 (1970).

48. Ms. Billsie is entitled to recover actual and punitive damages in an amount to be determined at trial.

### Fifth Claim for Relief: Unjust Enrichment

49. Defendants knowingly benefitted from the wrongful garnishment of Ms. Billsie's wages.

50. To allow Defendants to retain the garnished amounts would be unjust.

51. Ms. Billsie is entitled to recover actual damages in an amount to be determined at trial.

### Request for Relief

Ms. Billsie requests that this Court award:

A. Statutory and actual damages, for violations of the FDCPA;

B. Statutory or actual damages, trebled, for violations of UPA;

C. Actual and punitive damages, for conversion;

D.  Actual and punitive damages, for tortious debt collection;

E.  Actual damages, for unjust enrichment;

F.  Prejudgment interest at 8 3/4% on all amounts wrongfully garnished from Ms. Billsie, to run from the date of each garnishment;

G.  Reasonable attorney fees and costs; and

H.  Such other relief as it deems just and proper.


Respectfully submitted,

FEFERMAN & WARREN, Attorneys for Plaintiff

 /s/ Rob Treinen
ROB TREINEN
300 Central Avenue, SW Suite 2000 East
Albuquerque, New Mexico 87102
(505) 243-7773
(505) 243-6663 (fax)